SARAH E. PAGE, Respondent, v. UNITED STATES COOPERAGE & HANDLE COMPANY, Appellant.

St. Louis Court of Appeals. Argued and Submitted February 5, 1913. Opinion Filed April 8, 1913.

MASTER AND SERVANT: Injury to Servant: Defective Machinery: Sufficiency of Evidence. In an action against a master for the death of an employee, caused by the bursting of a

wheel on a machine at which he was working in defendant's factory, evidence *held* insufficient to warrant a finding that defendant was negligent.

Appeal from Dunklin Circuit Court.—*Hon. W. S. C. Walker*, Judge.

REVERSED.

*J. L. Fort* for appellant.

*Bradley & McKay* for respondent.

REYNOLDS, P. J.—Action under the statute, by the mother, a widow, for damages sustained by reason of the death of her son, a young man nineteen years old. The acts of negligence pleaded are, first, that a jointer machine, at which the young man was working in the plant of the defendant company, and at which machine he was working in the course of his duties as an employee of defendant, and which had been furnished plaintiff's son with which to do his work, had previously been located in a mill which had burned, and by reason of the excessive heat caused by the mill burning over and on the jointer machine, the machine had become weak, cracked and damaged; second, that the governors on the engine were out of repair and defective and by reason thereof the engine frequently "ran away," that is the engine, because of the defective governors, frequently ran at an excessive rate of speed, thereby propelling the wheel of the jointer machine at an excessive rate of speed, and increasing the danger of operating the machine, it being charged that defendant knew, or by the exercise of ordinary care would have known, that the machine was not in a reasonably safe condition to operate. A general denial put these averments in issue.

Plaintiff having concluded her evidence, defendant introduced none.

There were six instructions given at the instance of plaintiff. The only instruction asked by defendant, being in the nature of a demurrer to the evidence, was refused. There was a verdict in favor of plaintiff for $625, judgment following. Filing its motion for a new trial and saving exception to that being overruled, defendant has perfected its appeal to this court.

The testimony is not voluminous and we have read all of it with very great care.

Taking up the negligence charged as to the heading machine or jointer, as it is indifferently called, as to which, as we have seen, it is charged that it had been injured in consequence of being in a mill which had burned down, certainly on one, and possibly two occasions, we find it thus: An experienced blacksmith, testifying for plaintiff, said that he had examined the wheel after the accident and found two small cracks in it; one of them looked old, the other somewhat fresher. It does not appear by the testimony of this witness whether the break occurred at these cracks. The wheel in which they were present was of cast iron. It appears that the engine and machinery had previously been in a shed of the mill which had burned, and this witness was asked what effect a fire such as the shed in which this machinery was placed would produce; what effect this fire would have on this cast-iron wheel, the bursting of which had killed the young man. He answered that he did not remember what fell on this machine but that it did not seem to him that the fire would have hurt the cast-iron very much. He was asked if it was not a fact that when cast-iron was heated and bearing a great weight, or when a great weight of any kind fell on it, if it was not likely to crack. He answered that it would, but that he did not think the heat to which this machinery had been exposed would have done it. One of these cracks that he referred to, he said, was about an inch long, the other about three-fourths of an inch, clear across the wheel, one next to

the axle, the other not, the cracks extending up into the diameter of the wheel and going about an inch into the wheel. Asked if such a crack as that could be discovered by a person looking at it, witness answered that he would have to be a very close examiner. Asked if one could not discover it if he got down and examined it, witness said that he did not believe one could; that he did not know whether he could have discovered it or not; that it was "a mighty close crack." Asked if one would not have had to take the wheel off in rebuilding, he said: "Yes, sir; but then he may not have seen the crack." Asked if one had been looking for a defect that might have happened after the fire, what he (witness) would say about the probability of finding it, he answered: "They would have had to file it to have found it; and I don't think they could have found it then, because it fits back mighty tight and cements over."

This was the only defect testified to as in the heading machine or jointer itself, and there was no attempt to prove that the employer had any knowledge whatever of the presence of these cracks. The only other testimony claimed to bear on this defect was that of a witness who testified that if this wheel ran over seven hundred revolutions per minute, it would be running over its capacity. But even this latter witness testified that he had seen this wheel tested at over seven hundred revolutions per minute and nothing had happened to it. Asked if it was likely to cause it to be torn to pieces if run over seven hundred revolutions per minute when working headings, this witness said that he did not know; had never heard of one going to pieces running at the rate as was the one in question, and that it was after it had gone through the fire that he saw it tested at over seven hundred revolutions per minute.

All the testimony concerning the governor being out of repair and defective, was that of a witness, who

was working around the machinery at the time of the accident, that directly before the wheel burst, a piece of which flying off had killed the young man, that he had heard an unusual noise he thought was caused by the increased speed of the jointer machine, that the engine was "running away," that is running faster than it usually ran. He testified that on some occasions both before and after the fire through which this engine had gone, it had ran away, meaning by that, as he explained, that it had run faster than common. This was substantially all the testimony relied upon to prove the second assignment of negligence. No explanation whatever was given in the evidence as to why this increased speed occurred or the cause of it, or that it resulted from any defect in the governor, or in the machinery. This was substantially all the evidence relied on to prove the second assignment of negligence.

There was evidence that the engineer in charge of the engine at the time, and who was killed by the same accident, was a very careful man.

We are unable to conclude from a careful consideration of the evidence in the case that the negligence charged has been proven by any substantial evidence.

Other errors relating to the intructions given are assigned by counsel for appellant which are unnecessary to notice.

We are compelled to reverse the judgment in this cause. *Nortoni* and *Allen, JJ.,* concur.